IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| SCOTT DUCEY, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Case No. 08-CV-0692-MJR-DGW |
| FARZANA SIDDIQUI, M.D., | ) ) ) |  |
| Defendant | ) |  |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. Introduction

Plaintiff Scott Ducey is a forty-one year old inmate who is currently incarcerated at the Menard Correctional Center ("Menard"). On February 16, 2005, Ducey filed this lawsuit pursuant to 42 U.S.C. § 1983 against Defendants Farzana Siddiqui, M.D. and Christine Brown (Docs. 1 & 10). On March 28, 2008, the Court dismissed Plaintiff's claims against Defendant Brown (Doc. 52); therefore, the only remaining claim is against Dr. Siddiqui. Ducey alleges that Dr. Siddiqui violated his Eighth Amendment rights while was he was incarcerated at the Pinckneyville Correctional Center ("Pinckneyville") by being deliberately indifferent to his mental health needs (*See* Docs. 1, 84-3, p. 22).

Now before the Court is Dr. Siddiqui's motion for summary judgment (Doc. 73). On November 19, 2008, Ducey responded by sending medical records, declarations, and other documents dating back to 1999 (Doc. 84). At that time, Plaintiff informed the Court that he could not file a written response to the Defendant's motion because he was segregated from Menard's general population, and because the prison officials working at Menard prevented him from doing so (Doc. 83).

Having fully considered the parties' filings, the Court hereby **GRANTS** the Defendant's motion for summary judgment (Doc. 73).

### B.  Summary Judgment Standard

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56 (c);** *Haefling v. United Parcel Service, Inc.,* **169 F.3d 494, 497 (7th Cir. 1999)**; *Dempsey v. Atchison, Topeka and Santa Fe Railway Co.*, **16 F.3d 832, 836 (7th Cir. 1994).** "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56 (c).** The initial burden is upon the moving party to establish that no material facts are in dispute as to an essential element of the non-moving party's case. *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, **554 F.3d 1133, 1137 (7th Cir. 2009).** Once the moving party meets the burden, the non-moving party must come forward with evidence that establishes a genuine issue for trial. **Fed. R. Civ. P. 56(e).**

A fact is material if it is outcome determinative under applicable law. *Hardin v. S.C. Johnson & Son, Inc.*, **167 F.3d 340, 344 (7th Cir. 1999);** *Smith v. Severn*, **129 F.3d 419, 427 (7th Cir. 1997);** *Estate of Stevens v. City of Green Bay*, **105 F.3d 1169, 1173 (7th Cir. 1997).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Plair v. E.J. Brach & Sons*, **Inc., 105 F.3d 343, 346 (7th Cir. 1997);** *Lawshe v. Simpson*, **16 F.3d 1475, 1478 (7th Cir. 1994);** *Dempsey*, **16 F.3d at 836.** In deciding such a motion, the trial court must determine whether the evidence presented by the opposing party is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 250 (1986).** *See also Celotex Corp. v. Catrett*, **477 U.S. 317, 322-23 (1986);** *Haefling,* **169 F.3d at 497-98.**

### C. Background Facts and the Parties' Arguments

According to Plaintiff, his mental health problems began over ten years ago when a physician who is not associated with the Illinois Department of Corrections determined that Plaintiff had bipolar disorder, social anxiety disorder, and depression (Doc, 84-3, p. 23). He was hospitalized for depression at the age of twenty-seven, and claims to have a history of suicide attempts (Doc. 84-2, pp. 10-11, 22). As a result of these disorders, Plaintiff contends various physicians gave him prescriptions for Tegretol, Seroquel, and Zoloft, and he took those exact three medications for several years (Doc. 73-4, Deposition of Scott Ducey, p. 4).

Dr. Siddiqui first saw Plaintiff when he was transferred to Pinckneyville from another prison. She examined him soon after his arrival and diagnosed him with having a depressive disorder with alcohol abuse (Doc. 73-2, pp. 2-3). Plaintiff was in fact taking Tegretol, Seroquel, and Zoloft when Dr. Siddiqui initially examined him, so she continued to treat him with these medications for a short time (*Id.*). She soon determined, however, that Plaintiff did not need to take this combination of drugs and decided to change his medication to Trazadone (Doc. 73-2, p. 3). After later determining that Plaintiff had a "history of depressive disorders and self-reported anxiety" she changed his medication once again by prescribing him Vistaril (*Id.* at p. 5).

As a result of Dr. Siddiqui's decision to change the course of treatment to which Plaintiff had become used to, Plaintiff became upset (Doc. 84-3, p. 13; Doc. 73-4, pp. 3, 6). He complained to Defendant because Trazadone made him sleepy, and he complained about

3

Imipramine[1] because it did not help him sleep (Doc. 73-4, p. 8; Doc. 73-2, p. 5). Plaintiff asked Dr. Siddiqui during one of his appointments why she could not treat him with Tegretol, Seroquel, and Zoloft (Doc. 73-2, pp. 5-6). Defendant eventually allowed Plaintiff to take Tegretol, but this decision still failed to satisfy Ducey because he then demanded to receive Zoloft (Doc. 73-2, p. 7). Ducey further contends that Defendant failed to examine him for approximately fifteen months after she discontinued his medication (Doc. 73-4, p. 3).

Plaintiff claims that Defendant's decision not to prescribe him with the trio of drugs he requested caused him to experience an array of mental illness symptoms, prevented him from showering and eating, and hindered him from effectively associating with the prison's general population (Doc. 73-4, p. 6; Doc. 84-3, p. 8). As a result, Plaintiff claims that Defendant's treatment decisions constitute deliberate indifference to his serious mental health needs (Doc. 84-3).

In response, Defendant argues that she treated Ducey based solely on her professional medical judgment (Doc. 73-2, ¶ 30). She further maintains the medical records show she treated Ducey a number of times while he was incarcerated at Pinckneyville; therefore, Ducey's argument to the contrary is unfounded (*See* Doc. 73-2, pp. 2-7; Doc. 73-3). Finally, Defendant argues that she is entitled to qualified immunity.

### D. Analysis

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under 42 U.S.C. § 1983. ***Estelle v. Gamble,* 429 U.S. 97, 104-105 (1976).** "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . [which is] proscribed by the Eighth Amendment." *Id.* This prohibition

---

[1] A psychiatrist at Pinckneyville other than Defendant prescribed Plaintiff Imipramine (Doc. 73-2, pp. 5-6).

applies to "prison doctors in their response to the prisoner's needs." *Id.* Consequently, to prove an Eighth Amendment violation, a prisoner must show that "(1) he had a serious medical need, and (2) the defendant [was] deliberately indifferent to it." **Wynn v. Southward, 251 F.3d 588, 592 (7th Cir. 2001).**

## 1.  Whether Ducey's Mental Health Issues Constitute Serious Medical Needs

The threshold inquiry in this case is whether Ducey's medical needs were "serious" within the meaning of *Estelle*. **See Wynn, 251 F.3d at 592.** This is the "objective component" of any deliberate indifference claim, and it can only be satisfied if the inmate shows that his medical condition is "objectively, sufficiently serious." **Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).** A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." **Wynn, 251 F.3d at 592;** *see* **Foelker v. Outagamie County, 394 F.3d 510 512 (7th Cir. 2005); Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997).** When the condition is one "that a reasonable doctor or patient would find important and worthy of comment or treatment; [or one] that significantly affects an individual's daily activities . . ." it is a serious medical need. **Guiterrez, 111 F.3d at 1373.** Dr. Siddiqui argues Ducey's mental health problems are not serious medical needs because they were "mild", and because anxiety does not rise to the level of a serious condition.

Despite Defendant's arguments to the contrary, a reasonable jury could find that Ducey has a serious medical need based on the evidence. Years before Plaintiff was incarcerated at Pinckneyville, a doctor diagnosed him with having bipolar disorder, social anxiety disorder, depression, and manic symptoms (Doc. 84-3, p. 23). The Seventh Circuit has previous described these same disorders as "serious mental health problems." *See* **Sanville v. McCaughtry, 266 F.3d 724, 728 (7th Cir. 2001) (characterizing an inmate with a depressive order, bipolar disorder,**

and manic depression as someone with serious mental health problems); *see also Partridge v. Two Unknown Police Officers of the City of Houston, Texas,* 791 F.2d 1182, 1187 (5th Cir. 1986). ("a psychological or psychiatric condition can be serious as any physical pathology or injury . . . ."). Plaintiff was hospitalized for depression at the age of twenty-seven (Doc. 84-3, p. 22). When Defendant examined Plaintiff for the first time, she diagnosed him with having a depressive disorder, and although she discontinued the medicine Plaintiff was taking when he arrived at Pinckneyville, she treated Plaintiff by prescribing him other drugs (Doc. 73-2, p. 3). Plaintiff's mental health conditions obviously required "treatment" from several physicians, including Defendant (*see* Doc. 73-4, pp. 4-5).

Consequently, the Court finds that a genuine issue of material fact exists as to whether Ducey's mental health condition constitutes a serious medical need.

**2.  Whether Dr. Siddiqui was Deliberately Indifferent to Ducey's Serious Medical Needs**

Though Ducey's mental health problems may rise to the level of "serious medical needs," no reasonable jury could not find that Dr. Siddiqui was deliberately indifferent to Ducey's mental health needs.

"Deliberate indifference is a high standard." *Mayan v. Weed,* 2009 WL 382515, **2 (7th Cir. Feb. 12, 2009). In order to avoid summary judgment, Ducey needed to produce evidence showing Defendant "acted with a sufficiently culpable state of mind" and that she "knew of and disregarded an excessive risk" to his health. *Greeno,* 414 F.3d at 653 (quotations omitted). Instead the evidence before the Court shows only that Ducey did not like Defendant's decision to discontinue his prescription for Tegretol, Seroquel, and Zolof.

Although the Court can understand why Plaintiff was not fond of Dr. Siddiqui's decision to discontinue medication he had taken for years, Plaintiff's unhappiness with Defendant's treatment decisions does not show that she was deliberately indifferent to his medical needs.

6

"Mere dissatisfaction or disagreement with a course of treatment is generally insufficient; [courts] defer to a medical professional's treatment decision unless no minimally competent professional would have so responded under those circumstances." ***Mayan v. Weed*, 2009 WL 382515, \*\*2 (7th Cir. Feb. 12, 2009)**. *See also **Jackson v. Kotter*, 541 F.3d 688, 697-98 (7th Cir. 2008) (noting that a doctor is not deliberately indifferent to an inmate's serious medical needs unless he or she makes a decision that represents "such a substantial departure from accepted professional judgment, practice or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.").** Courts defer to a physician's treatment decisions because "there is not one proper way to practice medicine in prison." *Id.* An inmate "is not entitled to demand specific care. [He] is not entitled to the best care possible. [He] is entitled to reasonable measures to meet a substantial risk of serious harm." *Forbes v*. **Edgar, 112 F.3d 262, 267 (7th Cir. 1997).** *See also **Jones v. Drew,* 2007 WL 737359, \*\*4 (7th Cir. Mar. 12, 2007) (noting inmate is entitled only "reasonable" medical measures to meet a substantial risk of serious harm)**. Consequently, Defendant's decision to change the type of treatment Plaintiff previously received does not amount to "cruel and unusual punishment" simply because Ducey disagreed with it. *Id.* **at 698 (citations omitted) (noting that a medical professional's decision not to perform certain measures does not necessarily represent cruel and unusual punishment).**

The evidence before the Court also does not substantiate Plaintiff's claim that once Defendant took him off his medication, she did not examine him for the next fifteen months. The medical records show that Dr. Siddiqui personally examined Plaintiff at least five times (*see* Doc. 73-2, pp. 2-7). She prescribed three different medications to help alleviate his symptoms — including one of the prescription drugs Plaintiff requested (Doc. 73-2, pp. 3-6). In addition, at one point Plaintiff demanded to be taken off of all of his medication, Dr. Siddiqui encouraged

Plaintiff to stick with the regime (Doc. 73-2, p. 6). These actions are not at all characteristic of a physician who "knew of and disregarded" a risk to an inmate's condition. Therefore, no reasonable jury could find that Defendant violated Ducey's Eighth Amendment rights.

Because there is no genuine issue of material fact that could support a finding that Dr. Siddiqui was deliberately indifferent to Ducey's serious medical needs, the Court is compelled to grant summary judgment in the Defendant's favor. As a result, it is not necessary to analyze Dr. Siddiqui's claim that she is entitled to qualified immunity.

### E. Conclusion

For the reasons explained herein, the Court finds that no genuine issue of material fact exists as to whether the Dr. Siddiqui violated Ducey's Eighth Amendment rights. Accordingly, the Court **GRANTS** Dr. Siddiqui's motion for summary judgment (Doc. 73). The Clerk of the Court is **DIRECTED** to enter judgment in favor of Dr. Siddiqui and against Ducey.

As no other claims remain pending in this action, this case is closed.

**IT IS SO ORDERED.**

**DATED this 13th day of August 2009.**

                                        **s/ Michael J. Reagan**
                                        **MICHAEL J. REAGAN**
                                        **United States District Judge**